**Gentry POWELL, III, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 46209.**

Court of Criminal Appeals of Texas.

Oct. 3, 1973.

Rehearing Denied Jan. 16, 1974.

Fred A. Semaan, Butts & Butts, San Antonio, for appellant.

J. Taylor Brite, Dist. Atty., Jourdanton, John Berry, County Atty., Karnes City.

Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of unlawful possession of a narcotic drug, to-wit: marihuana. Punishment was assessed by the jury at forty-five years.

About a week prior to the appellant's arrest, Narcotics Agent Howell, of the Texas Department of Public Safety, received information from a confidential source that David Curlee was putting a narcotics deal together and that the source would stay in touch if he was able to find out any other information. The informer again contacted Agent Howell on January 27, 1971, and stated that Curlee was still trying to put a narcotics deal together, that he lived at

2202 La Casa Street in Austin, and that he had a 1963 gray Ford stepside pickup with an aluminum camper on the back, bearing 1970 Texas license plate number 3F6252. This same informer again contacted Howell on January 30, 1971, at approximately 3:00 P.M., and advised him that David Curlee and the appellant were supposed to unload some narcotics from an aircraft on the Powell ranch near Pettus, Texas, between 3:00 P.M. and 4:15 P.M. that same day. Howell was advised at this time that Curlee's pickup would be used to transport the narcotics to Austin for the purpose of selling them.

Agent Howell immediately contacted the dispatcher of the Department of Public Safety in Austin and advised him to contact the D.P.S. dispatchers in San Antonio and Corpus Christi. The Corpus Christi dispatcher contacted Officer Bagwell who was patrolling in the vicinity of the Powell ranch. Officer Bagwell was informed that a 1963 Ford step-side pickup, Texas license number 3F6252, would meet an airplane at the Powell ranch and unload some narcotics from the plane to the pickup. Bagwell and his partner then proceeded to the Powell ranch and set up surveillance on top of a nearby hill where they could watch any activities occurring on the ranch. At approximately 4:05 P.M., Bagwell observed a small plane land. A pickup truck answering the description of Curlee's pickup pulled up to the airplane immediately after it had landed. Officer Bagwell then observed through his binoculars three persons, whom he could not identify, hauling bundles out of the airplane and putting them in the back of the pickup. After approximately fifteen minutes, the airplane took off and the pickup proceeded to the ranch house where it stopped for another ten minutes before departing.[1] Officer Bagwell was unable to observe whether anyone got in or out of the pickup while it was stopped at the ranch house.

After the pickup left the ranch, Officer Bagwell and his partner followed it on Highway 239, staying one-half to one-quarter mile behind it for approximately twelve miles. The D.P.S. dispatcher then radioed Bagwell to stop the vehicle, which he did. Appellant was a passenger in the pickup and David Curlee was the driver. The two officers frisked appellant and Curlee, finding nothing at that time. Officer Bagwell then went to the back of the pickup and raised the door to the camper. He saw eight large bundles wrapped in bright colored cloth, the contents of which were later confirmed as being approximately three hundred pounds of marihuana and fifty pounds of hashish. A small amount of marihuana was later discovered in appellant's pants and coat pocket.

By his fourth ground of error, appellant contends that the evidence is insufficient to sustain his conviction. We will consider this ground of error first. He argues that there is no direct evidence linking him to the alleged marihuana in the camper.

■■■■■ When an accused is charged with the unlawful possession of a narcotic or dangerous drug, two elements must be proven: (1) that he exercised care, control, and management over the contraband; and (2) that he knew the object he possessed was contraband. Payne v. State, 480 S.W.2d 732 (Tex.Cr.App.1972); Ramos v. State, 478 S.W.2d 102 (Tex.Cr.App. 1972); Rodriguez v. State, 372 S.W.2d 541 (Tex.Cr.App.1963). The evidence must affirmatively link the accused to the narcotics in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the narcotic's existence and of its whereabouts. Harvey v. State, 487 S.W.2d 75 (Tex.Cr.App.1972); Shortnacy v. State, 474 S.W.2d 713 (Tex. Cr.App.1972); Carroll v. State, 90 Ariz. 411, 368 P.2d 649 (1962). An affirmative

---

1. Another state witness, Deputy Sheriff Garza of Goliad County, testified almost identically to the above facts as Officer Bagwell did. Deputy Garza arrived on the scene at about the same time as Officer Bagwell and his partner did and observed the activities on the ranch through his own binoculars.

link may be established by the showing of additional independent facts and circumstances which indicate the accused's knowledge of the narcotic as well as his control over such. Williams v. State, 498 S.W.2d 340 (Tex.Cr.App.1972).

■ In the case at bar, we find that the following facts establish an affirmative link between the appellant and the marihuana and hashish found in the back of Curlee's pickup: (1) three people were seen at the Powell ranch where the airplane and the pickup met; (2) the three people appeared to be unloading bundles from the plane into the back of the pickup; (3) one person took off in the airplane and two people left in the pickup and were later found in it when it was stopped on the highway; (4) appellant was in the pickup after it was stopped; (5) a small quantity of marihuana was found on appellant's person; (6) there was testimony that appellant appeared to be under the influence of narcotics at the time of arrest. The evidence is sufficient to sustain the conviction.[2]

■ By his first ground of error appellant contends that the trial court erred in refusing his request to require the state to elect which one of the two offenses in evidence upon which to seek a conviction. His view is that the evidence showed two distinct offenses, i.e., possession of marihuana in the camper and possession of marihuana in the appellant's pockets. We regard the proof as showing not two distinct possessions but only one. The offense committed was a continuous one and the evidence introduced is so related in point of time and place as to show one continuous possession by appellant. See Juarez v. State, 479 S.W.2d 945 (Tex.Cr. App.1972); Sikes v. State, 169 Tex.Cr.R. 443, 334 S.W.2d 440 (1960); Glaze v. State, 165 Tex.Cr.R. 626, 310 S.W.2d 88 (1958); Long v. State, 158 Tex.Cr.R. 651, 258 S.W.2d 818 (1953); Jenkins v. State,

114 Tex.Cr.R. 320, 24 S.W.2d 1092 (1930). This also disposes of appellant's contention that the marihuana particles found in his pockets were discovered by an illegal search and were an insufficient amount to sustain a conviction. Compare Rubin v. State, 164 Tex.Cr.R. 42, 296 S.W.2d 548 (1956) with Pelham v. State, 164 Tex.Cr. R. 226, 298 S.W.2d 171 (1957). See also Reyes v. State, 480 S.W.2d 373 (Tex.Cr. App.).

■ By his second ground of error, appellant contends that the trial court erred in overruling his motion to suppress for the reason that no probable cause for his warrantless arrest and search existed.

Agent Howell testified at appellant's examining trial that his informer was credible and reliable and had on previous occasions given information leading to the arrest of other persons for narcotic violations. He also testified that his informer told him that he had actually been present when David Curlee was telling a third person about the narcotics transaction he had planned. The pickup that Curlee and appellant would be occupying was described specifically, including license number, and this description fit the truck into which the bundles from the airplane were transferred. The time and place that the airplane and truck would meet, stated to be between 3:00 and 4:15 P.M. on the Powell ranch near Pettus, were correct. The pickup's destination after the narcotics transfer was stated to be Austin, which was the direction Curlee and appellant were heading at the time of their arrest. The details given to Agent Howell by the informer were actually more specific than the ones given by the informer in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). See also Dickhaut v. State, 493 S.W.2d 223 (Tex. Cr.App.1973); Harris v. State, 486 S.W.2d 88 (Tex.Cr.App.1972); Almendarez v. State, 460 S.W.2d 921 (Tex.Cr.App.1970); Mottu v. State, 472 S.W.2d 522 (Tex.Cr.

---

2. It is noted that the jury was charged on the law of principals.

App.1971). The existence of circumstances which made the procuring of a search warrant impracticable was also shown. This was due to the fact that Agent Howell received the informer's call at 3:00 P.M. of the same day that the narcotics transaction was to take place and the fact that appellant and Curlee were in a truck. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924); Archer v. State, 474 S.W.2d 484 (Tex.Cr. App.1971).

Although Officer Bagwell made the arrest and search of the truck appellant was riding in, the test for determining probable cause in this type of situation is the sufficiency of the information known to the officer who requests another to make an arrest. Green v. State, 470 S.W.2d 901 (Tex.Cr.App.1971). Thus, the existence of probable cause in Agent Howell to arrest is what controlled the situation under consideration. We conclude the warrantless arrest and search and seizure were justified in this case.

█ Appellant's third ground of error is that the trial court erred in refusing to charge on the law of circumstantial evidence.

In this cause, marihuana was found on the person of appellant and there was direct evidence of his possession. This direct evidence alone removed the issue of circumstantial evidence. Barrera v. State, 491 S.W.2d 879 (Tex.Cr.App.1973); Ware v. State, 467 S.W.2d 256 (Tex.Cr.App. 1971).

The fifth ground of error is that the trial court erred in overruling the amended motion for a new trial because of jury misconduct. Appellant's complaint essentially is that the testimony elicited at the hearing on his motion for new trial showed that the jurors considered the probation and parole law in assessing punishment and the fact that appellant did not testify. Juror Sandoval, who appears to be the juror on whose testimony appellant relies most heavily, testified:

"Q. You recall now. Was anything said about how long he would be in the penitentiary or how quick he would get out on the thirty years?

A. Yes, sir.

Q. What was that that was said to you, please, ma'am.

A. He said that if we vote for thirty years, just go ahead and tell he wasn't guilty at all.

Q. Did they say when he would be out if you gave him the thirty years?

A. They said they won't give him because then that would just put him on probation.

Q. You were told that if he got thirty years, he would be put on probation?

A. Yes, sir.

Q. Did you believe that?

A. Why, I dont' know nothing.

Q. Then after that, is that what—is that when you changed your vote and voted for forty-five years?

A. For forty-five years.

Q. All right. Mrs. Sandoval, what do you recall was said about why this young man didn't take the stand or why he didn't tell his side of the story? Do you remember what was said about that, ma'am?

A. Yes, sir. Some of them said, 'Why didn't the boy *took* the stand, too.'

Q. And you remember how many discussed that?

A. I think there were about two or three of them.

Q. And did you hear the discussion? I mean, did you hear that yourself?

A. Yes, sir."

On cross-examination, Juror Sandoval testified:

"Q. And did you vote for forty-five years so that you could reach a verdict?

A. Yes, sir."

 The trial court is the place to decide issues of fact as to what occurred in the jury room. That decision will not be disturbed by this Court in the absence of an abuse of discretion. Bartell v. State, 464 S.W.2d 863 (Tex.Cr.App.1971). A discussion of parole by a jury will not always constitute reversible error, even where it is shown that one or more jurors changed his or their votes as a result thereof. Jones v. State, 462 S.W.2d 578 (Tex.Cr.App.1971). It must be shown that the statement was a misstatement of the law and that the juror relied upon this misstatement as an asserted fact.

 Herein, we have only one juror testifying that the statement was made that appellant would be given probation if given thirty years. This juror also testified that she did not know whether the statement was true or false and that she voted for forty-five years to reach a verdict. Nowhere does it appear that this juror relied on the statement. Nine jurors testified that if the statement was made they did not hear it. One juror testified that this matter was not discussed. The situation at hand is not the same as in Meyers v. State, 418 S.W.2d 676 (Tex.Cr.App.1967), wherein it was stated:

"The statement of a juror *who claimed to know that the defendant would not have to serve more than eight years* if given a life sentence, made while the jury was discussing the punishment they would assess, constituted 'other testimony' and a misstatement of the law." (Emphasis supplied)

In that case, the juror claimed to know the statement was true whereas here we have

no such claim. See also Mays v. State, 167 Tex.Cr.R. 339, 320 S.W.2d 13 (1959). Appellant has failed to prove that the jury misconduct, if any, was harmful to him and constituted the receiving of other testimony in violation of Article 40.03, Sec. 7, Vernon's Ann. C.C.P.

 Also, reversible error was not committed when three jurors asked the question as to why the appellant did not tell his side of the story. More than a majority of the jurors who testified at the hearing on the motion for a new trial stated that this did not happen, or if it did, they did not hear it. Nowhere in the record is there any reference to an answer being given or that the matter was considered by anyone as a circumstance against the appellant. In Byrom v. State, 154 Tex.Cr.R. 121, 225 S.W.2d 842 (1950), it is stated:

"A casual reference by the jury, during deliberations, to the failure of the accused to testify does not vitiate the verdict. To constitute reversible error, such reference must amount to a discussion by the jurors or be used as a circumstance against the accused."

See also Graham v. State, 123 Tex.Cr.R. 121, 57 S.W.2d 850 (1932).

 Appellant's sixth ground of error is that the trial court erred in overruling his motion for mistrial at the close of the punishment argument when the prosecutor argued matters not in evidence.

The prosecutor argued that the only reason to have this amount of drugs is for the purpose of sale. The error, if any, was waived by the failure to object.

 Appellant next complains of the prosecutor's argument that this was a "professional case" and a "big case," that this load was on its way to Austin to be sold to the highest bidder, and that the marihuana was worth a quarter of a million dollars. It appears from the record that all of these statements made by the prosecutor were

logical deductions from the evidence. Cf. Alejandro v. State, 493 S.W.2d 230 (Tex. Cr.App.1973), and cases cited therein.

Appellant's seventh ground of error is that the trial court erred in overruling his supplement to his amended motion for new trial because this denies him a fair trial by depriving him of presenting vital evidence. The supplemental motion sets out the details of appellant's having worked as an undercover agent for federal narcotics officers in Texas. Appellant's counsel on appeal, who was also his counsel at the hearing on his motion for a new trial, interviewed two federal narcotics officers who verified the fact that appellant had given them information about a shipment of marihuana that was to be flown in from Mexico to the Powell ranch about four months before the instant offense. It appears that this alleged "deal" cooled and nothing else transpired between appellant and the federal narcotics officers. Appellant admits in his supplemental motion that his trial counsel was informed of these facts and that it was fear for his safety which prompted him in not bringing this out at his trial. However, appellant contends that in spite of the newly discovered evidence rule, he should be granted a new trial in the interest of justice.

In 41 Tex.Jur.2d, New Trial, Sec. 105, page 253, it is written:

"To justify the grant of a new trial it generally must be shown that the evidence was unknown to the movant before the trial, that his failure to discover it was not due to his want of diligence, that its materiality was such as would probably bring about a different result on another trial, and, generally, that it was competent, and not merely cumulative, corroborative, collateral, or impeaching."

This is the "newly discovered evidence" rule wherein a defendant may be granted a new trial provided all of the above elements are satisfied. In the instant case, the evidence is not newly discovered be-

cause both appellant and his trial counsel were aware of it. Wrenn v. State, 478 S.W.2d 98 (Tex.Cr.App.1972); Bennett v. State, 455 S.W.2d 239 (Tex.Cr.App.1970); Watkins v. State, 438 S.W.2d 819 (Tex. Cr.App.1969).

We hold that the trial court did not err in overruling appellant's supplement to his amended motion for new trial because: (1) no diligence was shown; (2) no adequate excuse was given as to why this evidence was not presented; (3) appellant's chosen trial counsel was aware of it; and (4) appellant was adequately represented, knew what he was on trial for, and had an adequate opportunity to present this evidence. See also Taylor v. State, 470 S.W.2d 693 (Tex.Cr.App.1971); Huffman v. State, 479 S.W.2d 62 (Tex.Cr.App.1972); Hines v. State, 495 S.W.2d 252 (Tex.Cr.App.1973).

There being no reversible error, the judgment is affirmed.